**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Leland S. Smith Jr.,<br><br>               Debtor | Chapter 13<br>Case No. 16-10744 |

## ORDER REGARDING STAY TERMINATION UNDER 11 U.S.C. § 362(c)

This contested matter requires the Court to interpret 11 U.S.C. § 362(c)(3)(A). Section 362(c)(3)(A) plainly effects a termination of the automatic stay on the thirtieth day after the petition date in a chapter 7, 11, or 13 case if the debtor had a prior case dismissed within the previous year. However, the extent of termination under section 362(c)(3)(A) is not plain, and courts have struggled to find an interpretation that adheres to the statute's text and promotes its apparent purpose. One interpretation does not fulfill the statute's purpose in any meaningful sense, and others arguably run afoul of rules of statutory construction. No interpretation is entirely satisfactory.

Based on the text of section 362(c)(3)(A), the surrounding context, and the apparent purpose of the statute, the Court concludes that one interpretation is better than the others. When the stay terminates under section 362(c)(3)(A), section 362(a) ceases to protect the repeat-filing debtor and all of that debtor's property, including property of the debtor's estate.

### I.  BACKGROUND

The facts that gave rise to this contested matter are not in dispute. In December 2014, Leland S. Smith, Jr. filed a petition under chapter 13. In November 2016, Mr. Smith's case was dismissed because of his failure to make the payments required by a confirmed chapter 13 plan. On December 28, 2016, Mr. Smith commenced this chapter 13 case. No party in interest moved

for an order extending the stay under section 362(c)(3)(B). As a result, the stay terminated under section 362(c)(3)(A) on January 27, 2017.

The State of Maine Bureau of Revenue Services ("Maine Revenue") timely filed a proof of claim in this case. At a hearing on February 16, 2017, Maine Revenue moved for an order under 11 U.S.C. § 362(j) clarifying the extent to which the stay had terminated. Mr. Smith opposed Maine Revenue's proposed construction of section 362(c)(3)(A), and the parties submitted briefs outlining their respective positions. In March 2017, Mr. Smith's chapter 13 plan [Dkt. No. 3] was confirmed by an order providing that all estate property would remain estate property notwithstanding 11 U.S.C. § 1327(b). The confirmation order also reserved the question of the extent to which the stay had terminated pursuant to section 362(c)(3)(A). After a continued hearing on Maine Revenue's motion in April 2017, the Court took the matter under advisement.

## II. DISCUSSION

*A. Relief Under Section 362(j)*

Section 362(j) instructs the Court, on request of a party in interest, to "issue an order under [11 U.S.C. § 362(c)] confirming that the automatic stay has been terminated." 11 U.S.C. § 362(j). The statute does not define the term "party in interest" but Maine Revenue, as a creditor bound by the automatic stay, qualifies as such. Mr. Smith does not argue otherwise, and for good reason. If a creditor was not among the class of persons authorized to seek relief under section 362(j), it is hard to imagine who would be among that class. *See* 11 U.S.C. § 362(a) (establishing an automatic stay applicable to, among other things, acts to recover a claim); 11 U.S.C. § 101(10) (defining "creditor" as an entity holding a claim); *cf.* Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388 (2014) (stating "that a statutory cause of

action extends only to [parties] whose interests fall within the zone of interests protected by the law invoked") (quotation marks omitted).

B. *The Language of Section 362(c)(3)(A)*

Section 362(c)(3)(A) states that:

Except as provided in subsections (d), (e), (f), and (h) of this section—

. . .

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

11 U.S.C. § 362(c)(3)(A). At the outset, a few observations about the statute are in order. First, the statute is directed to "the stay under subsection (a)" not to any of the various parts of the stay. *See* id. Second, section 362(c)(3)(A) terminates the stay "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease[.]" Id. This clause refers to "property securing [a] debt," without distinguishing between property of the debtor on one hand and property of the estate on the other hand. *See* id. Third, the stay terminates "with respect to the debtor[.]" Id. Fourth, the stay terminates thirty days after the filing of the later case. Id. Although the statute can be dissected in this manner and although that dissection may be helpful in divining the meaning of the statute, none of these phrases should be interpreted in isolation or be given undue emphasis.

"Statutory construction . . . is a holistic endeavor." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988). In determining the extent of stay

termination, the Court's interpretive quest begins, but does not end, with the text of the statute. *See* United States v. Yellin (In re Weinstein), 272 F.3d 39, 43 (1st Cir. 2001) (indicating that the text of one section of the Bankruptcy Code controls if its meaning is clear, but that a single section need not be read in isolation if other sections provide textual evidence of the meaning of the section in question). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). When a statute is ambiguous, it may be appropriate to consult legislative history as an interpretive aid. *See* Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 737 (1985).

C. *Possible Interpretations of Section 362(c)(3)(A)*

The language of section 362(c)(3)(A) has resulted in multiple lines of authority. One line interprets this section, and specifically the phrase "with respect to the debtor," to effect a termination of the stay as to the debtor and the debtor's property, but not as to property of the estate. *See, e.g.,* Holcomb v. Hardeman (In re Holcomb), 380 B.R. 813 (B.A.P. 10th Cir. 2008); Jumpp v. Chase Home Fin., LLC (In re Jumpp), 356 B.R. 789 (B.A.P. 1st Cir. 2006); In re Jones, 339 B.R. 360 (Bankr. E.D.N.C. 2006). Mr. Smith favors this line of cases, which is sometimes described as the majority view. *See, e.g.,* In re Holcomb, 380 B.R. at 815. The second line of authority reads section 362(c)(3)(A), and specifically the phrase "with respect to the debtor," to terminate the stay as to a repeat-filing debtor, that debtor's property, and property of the debtor's estate, but not as to the debtor's spouse in a joint case if that spouse is not also a repeat filer. *See, e.g.*, St. Anne's Credit Union v. Ackell, 490 B.R. 141 (D. Mass. 2013); In re Daniel, 404 B.R. 318 (Bankr. N.D. Ill. 2009); In re Jupiter, 344 B.R. 754 (Bankr. D.S.C. 2006). Maine Revenue favors this line of cases, which is sometimes described as the minority view. *See, e.g.,*

- 4 -

St. Anne's Credit Union, 490 B.R. at 144.  A handful of courts depart from the reasoning of both lines of cases, and instead focus the analysis on the phrase "with respect to any action taken" in section 362(c)(3)(A).  *See* In re Bender, 562 B.R. 578, 580 (Bankr. E.D.N.Y. 2016); In re Paschal, 337 B.R. 274, 280 (Bankr. E.D.N.C. 2006).[1]

There is no controlling authority as to the correct interpretation.  The First Circuit Bankruptcy Appellate Panel ("BAP") has adopted the majority interpretation of section 362(c)(3)(A).  *See* Witkowski v. Knight (In re Witkowski), 523 B.R. 291 (B.A.P. 1st Cir. 2014); In re Jumpp, 356 B.R. 789.  The BAP's decisions must be given consideration as significant and persuasive authority, but there is no law definitively establishing that the decisions of the BAP are binding on bankruptcy courts within the First Circuit.  *See* LBM Fin. LLC v. Shamus Holdings, Inc., 2010 WL 4181137 at *2 n.2 (D. Mass. Sept. 28, 2010) (collecting cases to this effect); *see also* In re Virden, 279 B.R. 401, 409 n.12 (Bankr. D. Mass. 2002) (concluding that if district court judges do not bind each other, neither do bankruptcy judges even when empaneled on a bankruptcy appellate panel).

  D.  *The Meaning of "With Respect to the Debtor"*

In Daniel, the court parsed the language of section 362(c)(3)(A) and identified difficulties with three possible interpretations of the phrase "with respect to the debtor."  404 B.R. at 321-26.

---

[1] These courts have determined that Congress's use of the term "action taken" in section 362(c)(3)(A) must mean something different than the term "act" found in other parts of section 362, and have held that the term "action taken" means a formal activity or proceeding commenced prepetition.  *See* In re Bender, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016); In re Paschal, 337 B.R. 274, 280 (Bankr. E.D.N.C. 2006).  There is, however, room for a different interpretation of the phrase that begins with "action taken." *See, e.g.,* In re James, 358 B.R. 816, 819-20 (Bankr. S.D. Ga. 2007) (concluding that "when 'action taken' is read in context with the remaining provisions of § 362(c)(3) its application is not limited to creditors that have taken action prior to the pendency of the current case"); Laura B. Bartell, Staying the Serial Filer – Interpreting the New Exploding Stay Provisions of § 362(c)(3) of the Bankruptcy Code, 82 Am. Bankr. L.J. 201, 217 (2008) (discussing other Code provisions that characterize section 362(a) as generally staying "actions," and concluding that "the better reading of § 362(c)(3)(A) must be that 'the stay under subsection (a) with respect to any action' likewise refers to all provisions of § 362(a), not just those that use 'action' in the sense of a formal proceeding").  The parties have not specifically asked the Court to interpret "action taken" and have not presented a record that would render such an interpretation meaningful.  Consequently, the Court declines to construe that phrase.

After a careful examination of section 362(c)(3)(A) and its legislative history, the court concluded that the so-called minority view is the best interpretation of the statute. Id. at 326-27. Instead of reading "with respect to the debtor" to limit the termination of the stay to certain categories of property, the court read that phrase to distinguish between the repeat-filing debtor and the debtor's spouse, who is not a repeat filer, in a joint case. Id. For several reasons, this Court is persuaded by the textual analysis and the reasoning of Daniel.

First, as noted above, section 362(c)(3)(A) terminates the stay under subsection (a). In general, the stay under subsection (a) halts three kinds of acts: those directed against the debtor personally, 11 U.S.C. § 362(a)(1), (2), (6); those directed against property of the estate, 11 U.S.C. § 362(a)(2), (3), (4); and those directed against property of the debtor, 11 U.S.C. § 362(a)(5). A reference to the entirety of "the stay under subsection (a)" would seem to extend to all types of acts covered by the stay. Likewise, a termination of the "stay under subsection (a)" would seem to leave no part of the stay in place.

Second, Daniel's construction of "with respect to the debtor" is consistent with the opening provisions of section 362(c)(3). In relevant part, subsection (c)(3) states that subparagraph (A) applies "if a single or joint case is filed by or against a debtor under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed[.]" 11 U.S.C. § 362(c)(3). When subparagraph (A) applies, "the stay under subsection (a) . . . terminate[s] with respect to the debtor on the 30th day after the filing of the later case[.]" 11 U.S.C. § 362(c)(3)(A). The "debtor" with respect to whom the stay terminates under subparagraph (A) must be the same "debtor" who had a "single or joint case" dismissed and then reappeared in another "single or joint case . . . under chapter 7, 11, or 13" within one year of the dismissal of the prior case. See id. The statute does not say that the stay

- 6 -

terminates as to the spouse of such a debtor if the spouse was not also a repeat filer.  *See* id.  The Court therefore "construes . . . 'with respect to the debtor' to define which debtor is effected by this provision, with reference to [the prefatory language of] § 362(c)(3)."  In re Jupiter, 344 B.R. at 759.  *Accord* St. Anne's Credit Union, 490 B.R. at 145; Reswick v. Reswick (In re Reswick), 446 B.R. 362, 369-70 (B.A.P. 9th Cir. 2011).[2]

Third, the legislative history of section 362(c)(3)(A) supports the conclusion that section 362(c)(3)(A) terminates the stay as to the debtor and all of the debtor's property, including property of the debtor's estate.  *See* In re Daniel, 404 B.R. at 327-29 (providing a comprehensive analysis of the legislative history of section 362(c)(3)(A)).  Section 362(c)(3) was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), "which was enacted by Congress to correct perceived abuses of the bankruptcy system." Vitalich v. Bank of N.Y. Mellon, 569 B.R. 502, 509 (D.N.D. Cal. 2016) (quotation marks omitted).  More than a decade before the enactment of BAPCPA, Congress created a National Bankruptcy Review Commission to study problems related to the Code and to recommend solutions.  *See* Bankruptcy Reform Act of 1994, Pub. L. 103-394, §§ 602-03 & 608, 108 Stat. 4106 (1994).  In response to the Commission's recommendations, the House Judiciary Committee recommended amending section 362(c) to add a paragraph (3) with language nearly identical to that now set forth in section 362(c)(3)(A).  *See* H.R. Rep. 105-540, at 15-16 (1998).

---

[2]  This interpretation is not unassailable.  The use of a singular term in the Bankruptcy Code generally includes the plural of the same term.  11 U.S.C. § 102(7).  Applying this rule of construction to section 362(c)(3)(A) would yield the conclusion that the stay terminates as to both debtors in a joint case, even if one of the debtors did not have a prior case dismissed within the prior year.  Viewed this way, there would be no reason for Congress to have used the phrase "with respect to the debtor" to differentiate between the debtors in a joint case, as some courts have suggested.  However, Congress also expressly differentiated between the debtor and the debtor's spouse in a joint case in other parts of the Bankruptcy Code, *see, e.g.,* 11 U.S.C. § 101(10A), when it could have simply referred to the "debtor" and achieved the same result based on section 102(7).  In short, although the minority interpretation does not comport perfectly with the rule of construction in section 102(7), it is preferable to the majority interpretation, which suffers from more serious defects.

> In the analysis of this proposed amendment, the committee report explained that:
>
> The filing of a bankruptcy case causes the immediate imposition of an automatic stay, which prevents creditors from pursuing actions against debtors and their property.  In light of this, some debtors file successive bankruptcy cases to prevent secured creditors from foreclosing on their collateral.
>
> [The amendment to section 362(c)] remedies this problem by terminating the automatic stay in cases filed by an individual debtor under chapters 7, 11, and 13 if his or her prior case was dismissed within the preceding year. In the subsequently filed bankruptcy case, the automatic stay terminates 30 days following the filing date of the case unless the court, upon request of a party in interest, grants an extension.

Id. at 80.  This explanation reveals that Congress was concerned about the problem of successive bankruptcy filings interfering with foreclosures.  Congress intended to remedy that problem by terminating the automatic stay if a debtor filed for chapter 7, 11, or 13 within one year of the dismissal of the debtor's prior case.  If section 362(c)(3)(A) left the stay in effect as to property of the debtor's estate, the statute would not accomplish the statute's apparent object of permitting foreclosure actions to commence or continue.  *See* In re Daniel, 404 B.R. at 329.

The majority interpretation of section 362(c)(3)(A) turns myopically upon the meaning of five words in a lengthy and complex statute, while failing to promote the statute's manifest purpose.  The meaning of section 362(c)(3)(A) does not hinge upon one phrase alone; it is instead illuminated by the text of the statute in its entirety, by the text of surrounding statutes, and by the practical implications of any given interpretation.

    *i.*     *The Meaning of Section 362(c)(3)(A) in Context*

The automatic stay is one of the most fundamental protections afforded to a debtor under the Bankruptcy Code, Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986), and the statute is logically organized.  The stay is created and defined by section 362(a).  Exceptions to the stay are contained in section 362(b).  Section 362(c) addresses the continuation

of the stay, and section 362(d) governs relief from the stay. There are eleven other subsections addressing matters such as hearings, the burden of proof, and damages for violations of the stay. *See* 11 U.S.C. § 362(e)-(o). Any interpretation of a specific part of section 362 must be made after considering the entire statute and its overall structure. *See* Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co., 215 F.3d 195, 201 (1st Cir. 2000) (explaining that, when interpreting a statute, a court "will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law") (quotation marks omitted).

Section 362(c)(3) sits between two ends of a spectrum. At one end of this spectrum, the stay is automatic. The stay springs into effect upon the filing of a petition, and the Court has no role in its creation. *See* 11 U.S.C. § 362(a). This occurs when an individual files her first petition under title 11. At the other end of the spectrum, the stay is not created automatically and does not go into effect on the filing of a petition. This occurs when an individual becomes a debtor in any type of title 11 case if that individual had two or more "single or joint cases" dismissed within the previous year. *See* 11 U.S.C. § 362(c)(4)(A). When section 362(c)(4) is triggered, the Court can impose a stay, *see* 11 U.S.C. § 362(c)(4)(B), but the stay does not arise automatically. The dispute in this contested matter arises out of the need to determine exactly where, on this spectrum, section 362(c)(3) resides.

While both parties offer plausible interpretations of the statute, Maine Revenue's proposed construction fits more neatly on this spectrum. It is possible that Congress intended, in enacting section 362(c)(3)(A), for the stay to protect property of the estate in a debtor's second case in one year. It is possible that Congress wanted to unshackle creditors from the stay on the thirtieth day after the commencement of the case, but only as to the debtor and the debtor's

property that is not included in the estate (while leaving property of the estate fully insulated by the stay). This seems unlikely, however, given that the practical effect of terminating the stay on day thirty only as to the debtor and the debtor's property would be negligible at best.

A stay termination on day thirty that did not apply to property of the estate would have little impact in cases under chapter 7, 11, or 13. On the thirtieth day after the petition date, the debtor is unlikely to have much in the way of property that is both outside of the estate and available to creditors. The only property belonging to the debtor, but not the estate, would be property that has been abandoned, property that is exempt, and property that is excepted from the applicable definitions of estate property. *See* In re Jupiter, 344 B.R. at 757. Exempt property "does not exist as of the 30th day after filing," and "only comes into existence, at the earliest, thirty days after the conclusion of the § 341 meeting, or some 50 days into the case." In re Scott-Hood, 473 B.R. 133, 139 (Bankr. W.D. Tex. 2012) (citing Fed. R. Bankr. P. 2003(a), 4003(b), 11 U.S.C. §§ 341(a), 522(c), (l)). Even after property is exempted, it is "not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case," except for several specified types of debts, including tax liens, notice of which was properly filed. 11 U.S.C. § 522(c). Thus, terminating the stay as to exempt property would have only a limited practical effect on collection actions because creditors do not generally pursue recovery of their claims from exempt property. *See* In re Daniel, 404 B.R. at 322 n.3.

A stay termination that did not apply to property of the estate would also be restricted by the limited window between day thirty and discharge in a chapter 7 case, and by the expansive definitions of property of the estate in chapter 11 and 13. In a chapter 7 case, a stay termination only as to the debtor and the debtor's property would permit a judgment to be enforced against the debtor's post-petition earnings – which are not included in the estate – but "only until the

- 10 -

debtor received a discharge, which usually happens within 80 to 100 days after the bankruptcy filing." Id. at 323. At that point, the discharge injunction would prohibit the commencement or continuation of any action to collect on a prepetition debt. *See* 11 U.S.C. § 524(a). Finally, in chapter 11 and 13, the debtor's post-petition earnings are included in the estate, *see* 11 U.S.C. §§ 1115, 1306, and would be protected by the stay under the majority interpretation of section 362(c)(3)(A). The dearth of the debtor's property that is not included in the estate in cases under chapter 7, 11, and 13 on the thirtieth day after the petition would render the impact of a limited stay termination inconsequential.[3]

A more likely result is that, in the second case, the stay arises automatically but does not continue for the duration specified in section 362(c)(1) and (2). From the debtor's perspective, this is better than the result that obtains when the debtor is in her third case in a year: in those circumstances, there is no automatic stay. *See* 11 U.S.C. § 362(c)(4). The situation is worse than the result that obtains when the debtor is in her first case in the year: in those circumstances, the debtor gets an automatic stay with a much longer shelf life. In the middle—namely, section 362(c)(3)—it stands to reason that parties in interest would be given a brief breathing spell so that they can determine whether to seek a longer term stay.

---

[3] Mr. Smith has argued that terminating the stay as to the debtor's property would have a meaningful impact in because it would allow creditors to make dunning phone calls, bring eviction actions, and reduce their claims to judgment. Although other courts have agreed with similar contentions, *see, e.g.,* Jumpp v. Chase Home Fin., LLC (In re Jumpp), 356 B.R. 789, 796-97 (B.A.P. 1st Cir. 2006); In re Williams, 346 B.R. 361, 369-70 (Bankr. E.D. Pa. 2006), this Court is not persuaded that Mr. Smith's interpretation is supported by the language of section 362(c)(3)(A) or the structure of section 362 as a whole. Given that text and context, and the practical reality that "[v]ery few creditors would seek to pursue only the debtor personally, or only property of the debtor," Reswick v. Reswick (In re Reswick), 446 B.R. 362, 368 (B.A.P. 9th Cir. 2011), the Court is not convinced that Congress intended section 362(c)(3)(A) to terminate the stay only as to the debtor and the debtor's property that is not included in the estate.

The standard for obtaining an extension of the stay beyond day thirty provides further support for the conclusion that the extent of stay termination under section 362(c)(3)(A) is not limited by categories of property. Section 362(c)(3)(B) provides that:

> on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]

11 U.S.C. § 362(c)(3)(B). As other courts have observed, reading section 362(c)(3)(A) to accomplish a complete stay termination gives meaning to the universe of "part[ies] in interest" entitled to seek stay extension under section 362(c)(3)(B). *See, e.g.,* In re Reswick, 446 B.R. at 369 ("Property of the estate would have to be subject to the stay termination for any party other than the debtor to have a sufficient reason to file the motion."); In re Daniel, 404 B.R. at 323 ("[R]eading 'with respect to the debtor' to exclude estate property renders largely meaningless the provision in § 362(c)(3)(B) that allows parties in interest to seek an order extending the stay."). Further, the statute allows the stay to be extended with respect to any or all creditors, not with respect to specific categories of property. *See* 11 U.S.C. § 362(c)(3)(B). This standard for extension with respect to creditors, rather than property, implies that when the stay terminates under section 362(c)(3)(A), it does so without regard to the classification of property as either inside or outside of the estate.

Finally, when a party in interest moves to extend the stay under subparagraph (B), the court must determine whether the case was filed in good faith as to the creditors to be stayed. 11 U.S.C. § 362(c)(3)(B). In certain circumstances, the movant can only obtain an extension by producing clear and convincing evidence sufficient to rebut a statutory presumption that the case was not filed in good faith. 11 U.S.C. § 362(c)(3)(C). In cases where the statutory presumption

arises and has not been rebutted, the Court is left with the conclusion that the case was not filed in good faith. Why, in those circumstances, would the statute allow the stay to protect property of the estate? The following hypothetical illustrates the problem:

Mr. Debtor files a chapter 13 case. His mortgagee files a motion for relief from stay so that it can start a foreclosure action on Mr. Debtor's residence. Before the hearing on the motion, Mr. Debtor's case is dismissed on his request under 11 U.S.C. § 1307(b). The mortgagee makes good on its stated intention and begins the foreclosure. Six months later, on the eve of the scheduled foreclosure sale, Mr. Debtor files his second chapter 13 case. For purposes of section 362(c)(3)(B), there is a presumption that his case was not filed in good faith as to the mortgagee. *See* 11 U.S.C. § 362(c)(3)(C)(ii). That makes sense, given the effect of the second filing on the mortgagee's ability to continue its foreclosure. But under the majority approach, even if Mr. Debtor did not seek an extension of the stay, the automatic stay would nonetheless continue to hinder the mortgagee's effort to foreclose its lien on Mr. Debtor's house because the house would be property of Mr. Debtor's estate. That is not, in this Court's view, the most sensible reading of the statute.

Mr. Smith's cases also illustrate the same point. His prior chapter 13 case was dismissed for failure to make payments under a confirmed plan. If he had moved for an extension of the stay under section 362(c)(3)(B), there would have been a presumption that his current case was not filed in good faith. *See* 11 U.S.C. § 362(c)(3)(C)(i)(II)(cc). Mr. Smith did not request an extension of the stay in this case. The effect of failing to move for an extension of the stay (and thereby avoiding the need to rebut the applicable statutory presumption) should be comparable to the effect of moving for an extension of the stay and then failing to rebut the applicable statutory presumption. It makes little sense to conclude that Congress meant to protect most, if not all, of

- 13 -

a debtor's property – by virtue of its status as property of the estate – in a case that was, at least presumptively, not filed in good faith. And regardless of the applicability of the presumptions in section 362(c)(3)(C), "[i]t appears inconsistent" with the object of deterring bad faith repeat filings "to permit a repeat filer falling within § 362(c)(3)(A) to retain the protection of the automatic stay for property of the bankruptcy estate, which as a practical matter usually consists of all significant assets." <u>Vitalich</u>, 569 B.R. at 509.

### III. CONCLUSION

The automatic stay has terminated under 11 U.S.C. § 362(c)(3)(A). Maine Revenue is no longer stayed, under section 362(a), from continuing the exercise of its rights and remedies against Mr. Smith or his property, even if such property is part of his bankruptcy estate.

Dated:  August 18, 2017

Michael A. Fagone
United States Bankruptcy Judge
District of Maine